UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

JOHNNY A. MARQUEZ,

               Petitioner,

v.

FERNANDIES FRAZIER[1], *et al.*,

               Respondents.

Case No. 3:20-cv-00073-RCJ-CSD

**ORDER**

Petitioner Johnny A. Marquez is a Nevada prisoner who is convicted of three counts of sexual assault with a minor under fourteen years of age and three counts of lewdness with a child under the age of fourteen. Petitioner filed a second amended petition for writ of habeas corpus under 18 U.S.C. § 2254, alleging claims of ineffective assistance of counsel and a complete breakdown in the attorney-client relationship. ECF No. 20. Also before the Court is Petitioner's motion to seal. ECF No. 66. The Court grants the motion to seal but denies the second amended petition, denies Petitioner a certificate of appealability, and directs the clerk to enter judgment accordingly.

I.    **Background**

      **a.  Conviction and Appeal**

Petitioner challenges a conviction and sentence imposed by the Eighth Judicial District Court for Clark County. ECF No. 35-6. Following a five-day trial, a jury found Marquez guilty of three counts of sexual assault of a minor under 14 years of age and three counts of lewdness

---

[1] According to the state corrections department's inmate locator page, Petitioner is incarcerated at Northen Nevada Correctional Center ("NNCC") *See https://ofdsearch.doc.nv.gov/form.php*. The department's website reflects that Tim Garrett is the warden of that facility. *See https://doc.nv.gov/Facilities/NNCC_Facility/.* At the end of this order, the Court directs the Clerk of the Court to substitute Petitioner's current immediate physical custodian, Tim Garrett, as Respondent for the prior Respondent Fernandies Frazier pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

with a minor under 14 years of age. The state court entered a judgment of conviction sentencing Petitioner to six life sentences with parole eligibility in 40 years. Petitioner filed a direct appeal, and the Nevada Supreme Court affirmed his conviction. ECF No. 36-4.

**b. Facts Underlying Conviction**

Petitioner and his girlfriend, Pamela Worley ("Worley") lived together in an apartment. ECF No. 32-1 at 17. Worley had a son, C.G., and a daughter, V.W., from previous relationships. *Id*. at 7, 117-18. In 2006, the children lived with C.G.'s father full-time, but the children would occasionally visit and stay with Petitioner and Worley at their apartment. *Id*. at 172-74.

In 2011, V.W. testified at trial that when she visited her mother, Petitioner put his private part in her mouth approximately six or seven times when she was about six or seven years old. ECF No. 32-1 at 5, 11, 16, 25, 31. She further testified that sometimes when Petitioner did this, "water or something would come out" and she "would go to the bathroom and spit it out." *Id*. at 19-20. V.W. told her mother what happened, but her mother did not believe her. *Id*. at 20. V.W. testified as to the details of the instances that Petitioner put his private part in her mouth. *Id*. at 20-25.

C.G.'s father, Juan Gonzalez ("Gonzalez") testified at trial that C.G. and V.W. lived with him. ECF No. 32-1 at 153-55. He testified that initially the children liked to visit their mother, but eventually only C.G. wanted to visit her. *Id*. at 157. During Thanksgiving weekend in 2008, V.W. did not want to get out of the car when Gonzalez dropped her and C.G. off at Worley's apartment. *Id*. at 158. After taking V.W. back home, she told Gonzalez what Petitioner did to her. *Id*. at 158-59. A week later, Gonzalez took V.W. to the police station to report what happened. *Id*. at 159.

Worley testified that V.W. told her in December 2008 that Petitioner had been sexually abusing her for about six months. ECF No. 32-1 at 177. Worley thought V.W. was lying. *Id*. at 180. She further testified that around Thanksgiving in 2008 that Petitioner told her that V.W. "was going to say something to get me put in jail." *Id*. at 181. Petitioner also told Worley that V.W. told him that Gonzalez "showed me how to suck on a dick, would you like me to show you

how he showed me?" *Id*. at 182. Worley asked V.W. if that was true, and V.W. denied it. *Id*.

### c.  State Post-Conviction Proceedings and Federal Habeas Action

Petitioner filed a state petition for writ of habeas corpus seeking post-conviction relief. ECF No. 36-9. Following an evidentiary hearing, the state petition was denied. ECF No. 38-1 Petitioner filed a post-conviction appeal, and the Nevada Supreme Court affirmed the denial of relief. ECF No. 39-6. Petitioner initiated the instant federal habeas matter in February 2020. ECF No. 1-1. Following appointment of counsel, Marquez filed his second amended petition. ECF No. 20. Respondents moved to dismiss the petition as untimely and containing unexhausted claims, and the Court denied the motion. ECF Nos. 43, 48.

## II.  Governing Standards of Review

### a.  Review under the Antiterrorism and Effective Death Penalty Act

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in *habeas corpus* cases under the Antiterrorism and Effective Death Penalty Act (AEDPA):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is contrary to established Supreme Court precedent, within the meaning of § 2254(d)(1), "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of established Supreme Court precedent under § 2254(d)(1), "if the state court

identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (internal citation omitted) (quoting *Williams*, 529 U.S. at 409-10).

 The Supreme Court has instructed that a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Court has stated that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted) (describing the standard as "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt").

 **b.  Standard for Evaluating an Ineffective Assistance of Counsel Claims**

 In *Strickland*, the Supreme Court propounded a two-prong test for analysis of ineffective assistance of counsel claims requiring Petitioner to demonstrate that: (1) the counsel's "representation fell below an objective standard of reasonableness[;]" and (2) the counsel's deficient performance prejudices Petitioner such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). Courts considering an ineffective-assistance-of-counsel claim must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. It is Petitioner's burden to show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id.* at 687. Additionally, to establish prejudice under *Strickland*, it is not enough for Petitioner to "show that the errors had some conceivable effect on the outcome of

the proceeding." *Id*. at 693. Rather, errors must be "so serious as to deprive [Petitioner] of a fair trial, a trial whose result is reliable." *Id*. at 687.

Where a state court previously adjudicated the ineffective assistance of counsel claim under *Strickland*, establishing the court's decision was unreasonable is especially difficult. *See Richter*, 562 U.S. at 104-05. In *Richter*, the Supreme Court clarified that *Strickland* and § 2254(d) are each highly deferential, and when the two apply in tandem, review is doubly so. *See id*. at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation marks omitted) The Court further clarified, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

## III.   Discussion

### a.   Ground 1—Complete Breakdown in Attorney-Client Relationship

In Ground 1, Petitioner alleges that there was a complete breakdown in the attorney-client relationship between him and his trial counsel, Robert Lucherini ("Lucherini"). ECF No. 20 at 12-16. He asserts that the state court violated his right to effective assistance of counsel by declining to appoint replacement counsel. *Id*. at 12-13. A year after the state court appointed Lucherini, Petitioner filed a *pro se* motion to dismiss Lucherini based on a lack of communication. *Id*. at 13. In his motion, Petitioner asserted that Lucherini wasn't investigating his case, that Lucherini was trying to force Petitioner into accepting a plea deal that he only had five minutes to consider, and that Petitioner lost trust in Lucherini. *Id*.

#### i.   State Court Determination

On direct appeal, the Nevada Supreme Court held:

[Petitioner] argues that the district court erred in denying his motion to dismiss counsel, [Lucherini], and appoint substitute counsel and that a full evidentiary hearing should have been conducted to determine Lucherini's effectiveness. [Petitioner] also argues that the district court erred by not discharging his counsel due to a lack of communication during the pretrial phase. [FN1] We disagree.

[FN1] Because [Petitioner] appeals the district court's denial of his motion to substitute counsel, his ineffective assistance of counsel concerns are not properly before this court. The proper vehicle for ineffective assistance of

counsel claims is through a timely post-conviction petition for a writ of habeas corpus.

At a hearing on July 21, 2010, three weeks prior to the scheduled jury trial, the district court heard [Petitioner's] motion to substitute counsel. The district court expressed concern regarding the timeliness of [Petitioner's] motion and explained that granting [Petitioner's] motion would result in a delay of trial. Nonetheless, the district court agreed to review [Petitioner's] exhibits and render a decision at the August 4, 2010, calendar call. After two weeks of consideration, the district court denied the motion for substitution of counsel. Due to court scheduling conflicts and defense counsel's notification that CPS documents still needed to be analyzed and supplied to the State, the trial was continued.

We review a district court's denial of a motion to dismiss for an abuse of discretion. *Garcia v. State*, 121 Nev. 327, 337, 113 P.3d 836, 843 (2005). "[A] defendant in a criminal trial does not have an unlimited right to substitution of counsel." *Id.* at 337, 113 P.3d at 842. To demonstrate a Sixth Amendment violation, a defendant must show sufficient cause. *Id.* (noting that sufficient cause would be "a complete collapse of the attorney-client relationship"). When reviewing a denial of a motion to substitute counsel, we consider the following three factors: "(1) the extent of the conflict between the defendant and his or her counsel, (2) the timeliness of the motion and the extent to which it will result in inconvenience or delay, and (3) the adequacy of the court's inquiry into the defendant's complaints." *Id.* at 337, 113 P.3d at 842-43 (citing *Young v. State*, 120 Nev. 963, 968, 102 P.3d 572, 576 (2004)).

As to the extent of the conflict, [Petitioner] argues that Lucherini's pretrial investigations were inadequate and that Lucherini failed to communicate with him for six months. However, [Petitioner] does not argue that a complete collapse in the attorney-client relationship occurred, and it does not appear that such collapse existed. Lucherini's pretrial investigation does not appear to be wholly inadequate. The record indicates that Lucherini did conduct investigation, as he alluded to discovery his investigator obtains from CPS at the August 2010 calendar call. Further, [Petitioner] failed to specify what relevant evidence he believed would have resulted from a more thorough investigation. Lucherini also does not appear to have ignored [Petitioner's] attempts to communicate. The record reveals at least five instances of contact between [Petitioner] and his attorney. Additionally, [Petitioner] did not indicate any dissatisfaction with his representation until he filed his motion a few weeks before trial, despite his allegation that Lucherini had not communicated with him for six months. *See Garcia* at 337-38, 113 P.3d at 843 (where the defendant made allegations of, among other things, failure to communicate and failure to investigate, but same was belied by the record, denying the motion to substitute counsel was proper).

As for the timeliness of the motion and the chances of trial delay, [Petitioner's] motion was presented three weeks before trial. Granting [Petitioner's] motion would have resulted in inconvenience and delay. We also note that this was the first time [Petitioner] alleged any problems between he and his counsel. This too is factually similar to *Garcia*. *See id.* at 338-39, 113 P.3d at 843 (where the defendant brought his motion to substitute counsel at calendar call and never alleged a problem with counsel in the time between appointment and trial, defendant's motive was held suspect and the motion was denied it would have resulted in inconvenience or delay).

Although the district court's oral inquiry was brief, we conclude it was adequate. A review of the record reveals that the "attorney log" attached to [Petitioner's] motion, which was expressly taken under advisement by the district court judge, was very in-depth and provided the same information that would have been provided at a hearing. Since [Petitioner] admitted in his "attorney log" to at least five occasions of attorney contact, including discussion regarding plea bargains and a conversation with an investigator, it was reasonable for the district court to deny [Petitioner's] motion. *See id.* at 339, 113 P.3d at 843, 44 (an in camera hearing may be unnecessary given the particular circumstances of a case, such as where communication between attorney and client is established by other means).

Further, the actual start date of trial, six months later, alleviated any prejudice regarding the alleged lack of communication and investigation. This appears confirmed by the fact [Petitioner] never renewed his motion for substitution. *See Young*, 120 Nev. at 969, 102 P.2d at 576 (the extent of conflict was evidenced, in part, by defendant filing multiple motions to substitute counsel). Accordingly, the district court did not abuse its discretion in denying [Petitioner's] motion to dismiss counsel and for appointment of alternate counsel.

ECF No. 36-4 at 3-6.

### ii.  Conclusion

The Nevada Supreme Court's rejection of Petitioner's claim was neither contrary to nor an objectively unreasonable application of clearly established law as determined by the United States Supreme Court.

Effective assistance of counsel "includes a right to conflict-free counsel." *United States v. Mett*, 65 F.3d 1531, 1534 (9th Cir. 1995). The Sixth Amendment, however, does not guarantee a criminal defendant a "meaningful relationship" with his attorney. *Morris v. Slappy,* 461 U.S. 1, 13 (1983). If the relationship between lawyer and client completely collapses, the refusal to substitute new counsel may violate a petitioner's Sixth Amendment right to effective assistance of counsel. *Brown v. Craven,* 424 F.2d 1166, 1170 (9th Cir.1970). *See United States v. Moore*, 159 F.3d 1154, 1158-59 (9th Cir. 1998) (fashioning a three-part test to determine whether a conflict rises to the level of being irreconcilable: "(1) the extent of the conflict; (2) the adequacy of the inquiry [by the state district court]; and (3) the timeliness of the motion"). Even if a petitioner were successfully able to demonstrate a complete breakdown in communication or prove that an irreconcilable conflict existed under the *Moore* factors, their claim may still fail. The United States Supreme Court has never held that an irreconcilable conflict with one's attorney constitutes a per se denial of the right to effective counsel. *Carter v. Davis*, 946 F.3d

489, 508 (9th Cir. 2019); *see also Clark v. Broomfield*, 83 F.5th 1141, 1156 (9th Cir. 2023).

Turning first to the extent of the conflict, in his motion to dismiss counsel, Petitioner asserted that counsel failed to communicate or visit Petitioner and failed to investigate his case. ECF No. 29-10 at 3. Petitioner asserts although an investigator prepared three relevant memos for the case, the memos postdate Petitioner's *pro se* motion to dismiss counsel. As provided by the state appellate court, trial counsel informed the state court during the August 4, 2010, hearing that he obtained materials from Child Protective Services during the investigation. ECF No. 29-15 at 4-5. In addition, Petitioner attached an "attorney log" to his motion wherein Petitioner documented interactions with counsel, including his communication attempts, such as phone calls that were not answered. *Id*. at 9-12. The attorney log, nonetheless, demonstrated that Petitioner communicated with counsel directly on five occasions, including three in-person visits. Because the record demonstrates that trial counsel's investigation was not wholly inadequate and that Petitioner and trial counsel conversed on at least five separate occasions, the Court cannot conclude that the extend of the conflict between Petitioner and trial counsel rose to a level that would cause concern. *See Schell v. Witek*, 218 F.3d 1017, 1026 (9th Cir. 2000) (explaining that a petitioner's Sixth Amendment right to counsel is violated when a "conflict between [Petitioner] and his attorney … result[s] in a total lack of communication").

Turning next to the state court's inquiry into the extent of the conflict, Petitioner asserts that the state court failed to sufficiently inquire into the extent of the conflict and that the state appellate court unreasonably determined the facts by finding that the interaction was adequate. Although the state court did not conduct a hearing on Petitioner's motion, Petitioner attached an in-depth attorney log to his motion to dismiss counsel. As stated by the state appellate court, the attorney log "provided the same information that would have been provided at a hearing." ECF No. 36-4 at 5. It is objectively reasonable to conclude that the state court had adequate information in order to make a determination whether the risk of the conflict was too remote to warrant separate counsel. *See United States v. McClendon*, 782 F.2d 785, 789 (9th Cir. 1986) ("While the trial judge might have made a more thorough inquiry into the substance of [the

defendant's] alleged conflict with counsel, [the defendant's] description of the problem and the judge's own observations provided a sufficient basis for reaching an informed decision. Thus, the district court's failure to conduct a formal inquiry was not fatal error."); *See also Holloway v. Arkansas*, 435 U.S. 475, 484 (1978).

Turning to the timing of Petitioner's motion, Petitioner asserts that he raised the issue in a timely way given how the conflict with counsel escalated over a period of months due to counsel's inaction. ECF No. 30-31. As considered by the state appellate court, Petitioner first communicated any issue with his trial counsel to the state court three weeks before trial and substitution of counsel would have resulted in inconvenience and delay. The state appellate court reasonably determined the state district court did not abuse its discretion in denying Petitioner's motion. *See McClendon*, 782 F.2d at 789 (determining that if a defendant moves for substitution of counsel, a state district court may exercise its discretion and deny that motion if it would require a continuance of the trial date).

In consideration of the foregoing, the Court cannot conclude that "the conflict between [Petitioner] and his attorney … resulted in an attorney-client relationship that fell short of that required by the Sixth Amendment." *Schell*, 218 F.3d at 1026. In addition, as stated above, the United State Supreme Court has nonetheless not endorsed the Ninth Circuit's test in *Moore* for purposes of determining whether an irreconcilable conflict between a defendant and trial counsel requires substitution of counsel under the Sixth Amendment, and the Supreme Court has never held that defendant has the right to a meaningful relationship with trial counsel. For these reasons, the state appellate court's determinations are neither contrary to nor constitute unreasonable applications of clearly established federal law as determined by the Supreme Court and are not based on unreasonable determinations of the facts in light of the evidence presented in the state-court proceedings. Accordingly, Petitioner is not entitled to habeas relief on Ground 1.

### b. Ground 2—Ineffective Assistance re: Plea-Bargaining

In Ground 2, Petitioner alleges that trial counsel rendered ineffective assistance during

the plea-bargaining stage. ECF No. 20 at 16-20. Petitioner asserts that although his trial counsel advised him to take a plea deal regarding a single charge with a sentencing range of 2 to 20 years that was probation eligible, he suffered from cognitive and mental health issues that impaired his ability to fully understand the deal. *Id*. at 17. Petitioner alleges that trial counsel failed to adequately explain the deal to him. *Id*.

### i.   Additional Background Information

#### 1.   Petitioner rejected the plea offers.

Petitioner waived a preliminary hearing in anticipation of accepting a guilty plea wherein Petitioner would plead guilty to one count of attempt lewdness with a minor under the age of fourteen, with prosecution making no recommendation at sentencing. ECF No. 29-1. Petitioner later rejected the deal. *Id*. In August 2009, Petitioner's trial counsel, Brent Percival ("Percival") withdrew as counsel and provided that he communicated an offer from prosecution to Petitioner prior to the preliminary hearing. ECF No. 29-5 at 6. Lucherini was appointed as new counsel for Petitioner. ECF No. 29-6 at 2.

At calendar call, prosecution advised that there was an offer in the case. ECF No. 29-6 at 7. One month later, during a status check, prosecution provided that the offer expired that day. *Id*. at 8. Petitioner did not accept the offer. *Id*. at 9. At a hearing on August 23, 2010, trial counsel noted that he advised Petitioner about the offer, but Petitioner refused to accept the offer. *Id*. at 12. At a hearing on January 28, 2011, trial counsel updated the state court that the matter was not resolved and noted that "[the prosecution] has gone out of his way to make sure the defendant is given every conceivable chance to take a deal." ECF No. 29-20 at 3.

During the January 28, 2011, hearing, the state court asked trial counsel to put the negotiation on the record as follows:

> **THE COURT:** What's the range of punishment with Counts 1 through 5, sexual assault?
>
> **LUCHERINI:** Each count – the sexual assault with a minor under the age of 14 is life sentence, parole eligibility beginning after 35 years. And, of course, the Court can run every count consecutive. He also has four counts of lewdness with a minor under the age of 14. That's a lifetime super – lifetime prison with eligibility for

parole after 10 years. So, he has to serve a minimum of ten years before he can even parole out. And, of course, the Court can run everything consecutive to each count.

And I've told that to the defendant, and I've told him that if the witnesses take the stand and we are not successful in getting what we believe the truth is and it – because of different evidence codes or because of the jury, he may be looking at going to prison for the rest of his life. The offer from the State is attempted lewdness with a minor, two to twenty. The Court could give the defendant even two to five and still be within the law and probation. The Court could even give him a – an OR at this time if the Court would want, but I wouldn't ask the Court to do it. But that's the offer the State is making.

**THE COURT**: Your recommendation to him was?

**LUCHERINI**: To take the deal.

. . .

**THE COURT:** What do you want to do, Mr. Marquez? Do you want to take the advice of your investigator and your attorney and accept this negotiation?

**PETITIONER:** I'm just asking for a fair trial, Your Honor.

. . .

**THE COURT:** . . . [T]hese attorneys are experienced, and they know the evidence. I don't know the evidence. But you can – his recommendation is to take the negotiation – and we could do this by way of *Alford* plea. Not that you're pleading guilty –

**PETITIONER:** I understand this.

**THE COURT**: -- but you – you've looked at the evidence, discussed with your attorney, and you're satisfied the State could prove that. And if they did, then there's a substantial likelihood of you being convicted. The *Alford* plea is you're pleading guilty not because in fact you are guilty, but to avoid being sentenced on a greater offense. And you don't want to listen to your lawyers.

**PETITIONER:** I listened to my attorney. I listened with all my heart. This is my life I'm fighting for. This is not just – this is no game. . . .

. . .

**THE COURT:** -- Mr. Marquez. If you're convicted, I've seen it in the past, that the first thing you do is, well my attorney didn't try to work out a deal for me. This is an attempt lewdness and it's dismissing five life terms and nine counts of lewdness with a minor. You know what, that's a difficult negotiation to come up with. Your attorney is – has been zealously representing you. You don't have to take it, because if you are convicted he doesn't go to jail when it comes down to it.

**PETITIONER:** I understand this.

ECF No. 29-20 at 6-12.

///

### 2. Petitioner's cognitive and mental health issues

Licensed Psychologist Dr. Shera Bradley evaluated Petitioner and concluded that Petitioner has weak verbal skills. ECF No. 37-9 at 25, 29. Her report provided that "[h]is verbal abilities were a significant deficit for him, especially his ability to reason verbally, recall things told to him verbally, and his fund of information." *Id*. at 25. Petitioner also experienced a difficult childhood, including witnessing domestic violence between his parents and having alcoholic, drug abusing parents. ECF No. 20 at 3. As an adult, Petitioner developed problems with alcoholism, depression, and suicidal ideation. ECF No. 37-9 at 27-28. Dr. Bradley opined that Petitioner's mental health struggles and poor verbal abilities "likely significantly influenced his decisions regarding the court process." *Id*. at 28-29.

At the state court postconviction evidentiary hearing, Dr. Bradley testified that Petitioner's verbal skills were "significantly below average." ECF No. 37-16 at 13. She expressed concerns about Petitioner's ability to understand information presented to him verbally and to keep up with the court at a quick pace. *Id*. at 15-17. In addition, his depression "compromise[d] his ability to take in information, make decisions, make appropriate decisions for his future." *Id*. at 18.

Petitioner testified that trial counsel never asked him questions about his education level or his mental health issues. ECF No. 37-16 at 32-33. Petitioner discussed a plea deal with Percival but did not recall talking about an offer with Lucherini.[2] *Id*. at 34-35. He testified that he did not want to confess to a crime that he did not commit. *Id*. at 38. Petitioner did not remember Lucherini describing the plea offer as being an *Alford* plea, and believed the state court judge offered him an *Alford* plea at the hearing. *Id*. He thought that if he accepted the judge's *Alford* plea, he would be going to prison for 20 years or life, because the judge warned that he was a harsh sentencer. *Id*. at 39, 44-45.

///

---

[2] Lucherini passed away and did not testify at the state court postconviction evidentiary hearing.

### ii. State Court Determination

The Nevada Supreme Court held:

> [Petitioner] asserts that his counsel failed to properly explain two plea offers made by the State. [Petitioner] asserted he would have accepted a plea offer had counsel properly explained the differences between the potential sentences he faced depending on whether he accepted a plea or went to trial. The district court conducted an evidentiary hearing concerning this issue wherein [Petitioner] testified. [FN1] Based on the testimony provided at the evidentiary hearing, the district court found that [Petitioner] was aware of the offers and the possible sentences they carried, but that he was worried about receiving a significant sentence if he pleaded guilty. Substantial evidence supports the district court's findings, and it therefore did not err by denying this claim. (citations omitted).
>
> > [FN1] Petitioner's trial counsel passed away before the evidentiary hearing on the postconviction petition.

ECF No. 39-6 at 4.

### iii. Conclusion

The Nevada Supreme Court's decision is not contrary to nor an unreasonable application of *Strickland* and is not based on unreasonable determinations of fact in the state court record. The Nevada appellate court determined that Petitioner was aware of the plea offers and the possible sentences. The record demonstrates that trial counsel communicated the offer to Petitioner. In Petitioner's attorney log documenting his communication with trial counsel, he noted they discussed the plea offer on February 24, 2010. ECF No. 29-10 at 10. Further, the plea offer was discussed with the state court during the January 28, 2011, hearing. ECF No. 29-20 at 3. Trial counsel informed the state court that he advised Petitioner to take the deal. *Id*. at 6-12.

The Court also determines that the state court reasonably found that Petitioner did not show that he was prejudiced by trial counsel's representation regarding the plea offer. "To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *Missouri v. Frye*, 566 U.S. 134, 147 (2012); *see also Lafler v. Cooper*, 566 U.S. 156, 163 (2012) ("In the context of pleas a defendant must show the outcome of the

plea process would have been different with competent advice"). The state appellate court reasonably concluded that Petitioner did not demonstrate a reasonable probability that he would have accepted the offer because Petitioner was worried about receiving a significant sentence if he pleaded guilty despite trial counsel's advice that he should accept the plea deal. Giving the state courts' ruling the deference required by both § 2254(d) and *Strickland*, the Court determines that the Nevada Supreme Court reasonably ruled that trial counsel was not deficient and Petitioner did not demonstrate resulting prejudice.

### c.   Ground 3—Ineffective Assistance re: Bad-Acts Evidence and Invocation of Fourth and Fifth Amendment Rights

In Ground 3, Petitioner alleges trial counsel rendered ineffective assistance based on two theories. First, Petitioner asserts that trial counsel opened the door to the introduction of evidence that he physically and emotionally abused Worley. ECF No. 20 at 21. Second, he alleges that trial counsel opened the door to the introduction of evidence that Petitioner invoked his right to an attorney during police interrogation and refused to provide a DNA sample. *Id*. at 23.

### i.   Ground 3(A)

#### 1.   Additional Background Information

At a pretrial conference, trial counsel, prosecution, and the state court discussed the extent to which the defense could elicit testimony regarding the credibility of the victim. ECF No. 34-1 at 11. Trial counsel provided as follows:

> Here's the problem, Judge. There are very few cases out there where the – we don't have to corroborate a witness when she is – when he is the only witness to prove that point. In other words, if there's only one witness to have corroborate, the only exception for that that I can find is in sexual assault cases. And the Supreme Court has indicated that in sexual assault cases, you don't have to corroborate the – a witness on a he said she said type of case. However, when you do that, you have to establish that she has credibility and her credibility can't be called into question. That's where I think we ended by arguing, Judge, we have a right to go into her credibility in greater detail because of the fact that there is an uncorroborated – there's no evidence out there other than her word as to this case; it's a he said she said.

ECF No. 34-1 at 11. Trial counsel stated that he would ask Worley about the victim's credibility, such as "if the victim has lied to her in the past, if there are problems with credibility. Those

problems are why she does not believe the child." *Id*. at 18. The prosecution explained that Worley told the prosecution that Petitioner has been manipulating her "for an extended period of time and he had actually been, for an extended period of time, violent with her physically." *Id*. at 19. The prosecution provided that:

> If the defense, you know, begins to badger her as to the reason why she didn't, you know, side with her daughter and the reasons why she took so long to believe her daughter, then they're going to open the door for us talking about him being mentally and physically abusive for a couple of years. And, so, I think there's a fine line there that they need to think about before they open that door.

*Id*. at 19.

On re-cross examination, Worley testified that the victim had never lied or stolen anything. ECF No. 34-1 at 67-59. She further testified as follows:

**Trial Counsel:** Okay. Why didn't you move out?

**Worley:** I was stuck from moving out because everything I get money he'd take it and gamble it and leave me nothing and I was unable to get away.

**Trial Counsel:** Okay. So, what did you do when this problem happened before you met him and you were out of money?

**Worley:** I wasn't out of money. I was working two jobs and I don't know where you get where I had no income. I was working two jobs as a dealer making good money. I have own apartment, my kids, everything and I lost everything because of him.

**Trial Counsel:** Okay. And, so why didn't you leave him and go back and work at those casinos – those jobs?

**Worley:** Why? Because he told me if I ever left him, he would kill me and whoever I'm with and our baby and the baby –

**Trial Counsel:** Objection; move to strike, Judge.

**Prosecution:** It's his question, Judge.

**The Court:** You asked the question.

*Id*.

## 2.  State Court Determination

The Nevada Supreme Court held:

[Petitioner] also claims that trial counsel was ineffective for eliciting and opening

the door to testimony from the victim's mother that [Petitioner] physically, emotionally, and verbally abused the mother. [Petitioner] failed to demonstrate deficient performance. The record shows that [Petitioner's] trial counsel told the court his strategy was to bring the victim's credibility into question, even after being warned that such questions could open the door to testimony about alleged domestic abuse, by asking the mother why she initially did not believe the victim's claims of assault. That decision was not objectively unreasonable. And, even if counsel was deficient in pursuing that line of questioning, this court rejected [Petitioner's] argument on direct appeal that the exclusion of this testimony would have changed the outcome of the case such that [Petitioner] cannot show prejudice. *Marquez v. State*, Docket No. 58568 at 697 (providing that an ineffective-assistance-of-counsel claim fails if the defendant makes an insufficient showing under either the performance or the prejudice prong).

ECF No. 39-6 at 5-6.

On direct appeal, the Nevada Supreme Court held:

Additionally, even if the domestic violence allegation was impermissible bad act evidence, we conclude that there was no plain error because this short segment of testimony did not change the outcome of the case.

ECF No. 36-4 at 9-11. (citation omitted).

### 3.  Conclusion

The Nevada Supreme Court's rejection of Petitioner's ineffective assistance claim was neither contrary to nor an objectively unreasonable application of *Strickland*.

The state appellate court reasonably determined that Petitioner failed to show that his trial counsel was deficient and, but for trial counsel's line of questioning that opened the door to Worley's testimony regarding abuse, the result of the proceeding would have been different. Petitioner has not sufficiently demonstrated that trial counsel's "representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 694. An attorney's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id*. at 691.  *See Dunn v. Reeves*, 141 S. Ct. 2405, 2410 (2021) ("[E]ven if there is reason to think that counsel's conduct 'was far from exemplary,' a court still may not grant relief if '[t]he record does not reveal' that counsel took an approach that no competent lawyer would have chosen.") The record demonstrates that trial counsel made the strategic decision to pursue a line of questioning to attack the credibility of Worley and the victim. Further, in light of the evidence presented at trial, Petitioner cannot show a reasonable

probability that, but for trial counsel's decision to pursue that line of questioning, the outcome of the trial would have been different. Petitioner is denied habeas relief as to Ground 3(A).

### ii.   Ground 3(B)

#### 1.   Additional Background Information

During police interrogation, a detective stated that the police had DNA matching a Hispanic male suggesting that the DNA would match Petitioner's DNA. ECF No. 20 at 24. Petitioner, however, is Native American. *Id*. Petitioner indicated that he would be willing to give a DNA sample, but when the detective returned to the topic of Petitioner consenting to providing a DNA sample, Petitioner stated that he needed to speak to an attorney first. *Id*.

Petitioner testified at trial. *Id*. Trial counsel asked Petitioner, "Okay. So, when the officers says I have your DNA, it shows you have committed a crime or words that you took to believe that you started having problems with the officer's credibility," to which Petitioner responded, "Yes." ECF No. 33-1 at 86. Trial counsel further elicited testimony from Petitioner that he asked for an attorney, that Petitioner was confused after the officer's questions, that Petitioner was scared, that Petitioner did not trust the officer and did not believe that the officer was looking for the truth. *Id*. On re-cross examination, Petitioner testified that he would have allowed the police to test his DNA for this case only, but he did not want his DNA to end up in a national database. *Id*. at 61.

#### 2.   State Court Determination

The Nevada Supreme Court held:

[Petitioner] first claims ineffective assistance based on trial counsel's elicitation of testimony that [Petitioner] refused to provide a DNA sample. But counsel elicited this testimony to support the defense theory that [Petitioner] a Native American, distrusted the questioning officer after the officer warned [Petitioner] that Hispanic DNA was found during the investigation. Thus, [Petitioner] has not shown that this decision was objectively unreasonable. *See Doleman v. State*, 112 Nev. 843, 848, 921 P.2d 278, 280-81 (1996) (providing that strategic decisions are "virtually unchallengable absent extraordinary circumstances" (quoting *Howard v. State*, 106 Nev. 713, 722, 800 P.2d 175, 180 (1990))). Even if counsel was deficient in that regard, [Petitioner has not addressed how the exclusion of this testimony would have led to reasonable probability of a different outcome.

[Petitioner] next claims that trial counsel was ineffective for eliciting and opening

the door to testimony that [Petitioner] invoked his right to counsel during police questioning. The record shows that [Petitioner's] counsel elicited this testimony as support for the defense theory that [Petitioner] distrusted the questioning officer. And, in turn, [Petitioner's] distrust of the officer was elicited to provide a basis, other than guilt, for [Petitioner's] refusal to give a DNA sample to that officer. That decision was not objectively unreasonable. *See id.* Even if counsel was deficient in that regard, Marquez has not addressed how the exclusion of this testimony would have led to a reasonable probability of a different outcome.

ECF No. 39-6 at 4-5.

### 3. Conclusion

The Nevada Supreme Court's rejection of Petitioner's ineffective assistance claim was neither contrary to nor an objectively unreasonable application of *Strickland*.

The state appellate court's determination that Petitioner failed to demonstrate that his counsel was deficient was not an unreasonable application of the performance prong of *Strickland*. Trial counsel's decision to elicit testimony that Petitioner did not submit a DNA sample and asked for an attorney during police interrogation "falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. As to the DNA sample, trial counsel also elicited testimony that Worley's ex-husband, Gonzalez, was of Cuban descent suggesting any Hispanic DNA found during an investigation belonged to him. ECF No. 33-1 at 56. As provided by the Nevada Supreme Court, Petitioner distrusted the police during the investigation after a detective informed Petitioner that they had obtained Hispanic DNA from their investigation in an attempt to have Petitioner confess. At closing, trial counsel continued this theory of defense by arguing that the detective's judgement was "clouded by the perception that it was a six-year-old assault case," and that the detective was "driven to find a means that justified the end result." ECF No. 33-1 at 146. *See Harrington*, 562 U.S. at 107 (2011) ("Counsel was entitled to formulate a strategy that was reasonable at the time.").

In addition, as determined by the Nevada Supreme Court, Petitioner cannot show a reasonable probability that, but for trial counsel's alleged deficiency, the outcome of the trial would have been different. V.W. testified at trial regarding the details as to the occasions that Petitioner had put his private part in her mouth. Her testimony was also corroborated by her mother's testimony, Gonzalez's testimony, as well as V.W.'s father's testimony that V.W.

experienced nightmares after he had full custody of her. In addition, the prosecution called a detective to testify as to his interview with V.W. and V.W.'s brother and mother testified that Petitioner wanted V.W. to sleep in bed with them around Thanksgiving in 2008. Accordingly, in light of the evidence presented at trial, Petitioner cannot demonstrate prejudice. Petitioner is denied habeas relief as to Ground 3(B).

### d.   Ground 4—Ineffective Assistance re: Sentencing

In Ground 4, Petitioner alleges trial counsel rendered ineffective assistance at sentencing because trial counsel didn't file a sentencing memorandum. ECF No. 20 at 26. In addition, trial counsel failed to investigate and present mitigating evidence, including Petitioner's difficult childhood, struggles with mental health and depression, and his substance abuse and gambling issues. *Id*.

### i.   State Court Determination

The Nevada Supreme Court held:

> [Petitioner] also argues that counsel should have presented mitigating evidence of any mental deficiencies at sentencing. After filing his postconviction petition, [Petitioner] completed a forensic psychological evaluation. At the evidentiary hearing regarding this claim, the doctor who completed the evaluation and [Petitioner] both testified. The district court thereafter determined that this claim failed for a lack of prejudice because nothing in the doctor's or [Petitioner's] testimony, or in the written evaluation, directly explained [Petitioner's] criminal behavior such that it would mitigate his sentence. Sufficient evidence in the record supports the finding; at most, the evaluation and testimony showed that [Petitioner] may have had trouble understanding court proceedings or making decisions during the case. As such, the district court did not err in denying relief on this claim.

ECF No. 39-6 at 3-4.

### ii.   Conclusion

The Nevada Supreme Court's ruling was neither contrary to nor an objectively unreasonable application of clearly established law as determined by the United States Supreme Court. As provided by the Nevada Supreme Court, Petitioner failed to demonstrate that the alleged deficiency was such as to give rise to a reasonable probability that, but for the alleged deficiency, the result of the sentencing would have been different. *See Strickland*, 466 U.S. at 688, 694. In evaluating prejudice, the Ninth Circuit has stated that courts should compare the

evidence petitioner alleges should have been presented with what was actually presented at sentencing and determining whether the difference "is sufficient to 'undermine the confidence in the outcome' of the proceeding." *Lambright v. Schriro*, 490 F.3d 1103, 1121 (9th Cir. 2007). Here, trial counsel asked the state court to consider running the counts concurrently and the presentence investigation report presented Petitioner's health, medical, and mental health history, including Petitioner's suicidal ideation and gambling issues. *See* ECF No. 42-2. As such, Petitioner fails to demonstrate that presentation of cumulative evidence related to Petitioner's mental health or difficult childhood would result in a different outcome at sentencing as such evidence did not directly explain Petitioner's criminal behavior.

In order to prevail on the ineffective assistance claim, Petitioner must show his trial counsel acted deficiently and resulting prejudice. *Strickland*, 466 U.S. at 694. However, the Court need not "address both components of the inquiry" if Petitioner "makes an insufficient showing on one." *Id*. at 697. Petitioner has not sufficiently demonstrated here that he was prejudiced based on trial counsel's conduct at sentencing. Therefore, the *Strickland* inquiry need not continue, and Petitioner is denied habeas relief as to Ground 4.

## IV.    Certificate of Appealability

This is a final order adverse to Petitioner. Rule 11 of the Rules Governing Section 2254 Cases requires the Court to issue or deny a certificate of appealability ("COA"). Therefore, the Court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002). Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether this Court's procedural ruling was

correct. *Id.*

Applying these standards, this Court finds that a certificate of appealability is unwarranted.

**V.     Motion to Seal**

Before the Court is Petitioner's Motion to Seal Document. ECF No. 66. Petitioner seeks leave to file under seal one document in the index of exhibits in support of his reply to his second amended petition: Exhibit 7, Child Protective Services Records (ECF No. 67-1).

Under Nevada law, juvenile justice records and information maintained by child welfare agencies are to be kept confidential. *See* Nev. Rev. Stat § 62H.025(1); Nev. Rev. Stat § 432B.280. Having reviewed and considered the matter in accordance with *Kamakana v. City and County of Honolulu*, 447 F.3d 1172 (9th Cir. 2006), and its progeny, the Court finds that a compelling need to protect the safety, privacy, and/or personal identifying information contained in the records, outweighs the public interest in open access to court records.

**VI.     Conclusion**

It is therefore ordered that Petitioner's second amended petition for writ of *habeas corpus* under 28 U.S.C. § 2254 (ECF No. 20) is denied.

It is further ordered that a certificate of appealability is denied.

It is further ordered that Petitioner's motion to seal document (ECF No. 66) is granted. Exhibit 7 (ECF No. 67-1) is considered properly filed under seal.

It is further ordered that the Clerk of the Court is directed to substitute Tim Garrett for Respondent Fernandies Frazier, enter judgment accordingly, and close this case.

DATED: January 10, 2024.

_____
ROBERT C. JONES
UNITED STATES DISTRICT JUDGE